**PUBLISHED**

UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

---

**No. 13-7291**

---

SAMUEL JUNIOR JACKSON,

Plaintiff - Appellant,

v.

DR. JOSEPH LIGHTSEY; DR. SHER GULERIA,

Defendants – Appellees,

and

N.C. D.O.C. MEDICAL STAFF,

Defendant.

---

Appeal from the United States District Court for the Eastern District of North Carolina, at Raleigh. James C. Fox, Senior District Judge. (5:11-ct-03221-F)

---

Argued: October 28, 2014 Decided: December 18, 2014

---

Before MOTZ, WYNN, and HARRIS, Circuit Judges.

---

Affirmed in part and vacated and remanded in part by published opinion. Judge Harris wrote the opinion, in which Judge Motz and Judge Wynn joined.

---

**ARGUED**: Daniel Scott Harawa, COVINGTON & BURLING LLP, Washington, D.C., for Appellant. Kelly Street Brown, YOUNG MOORE AND HENDERSON, P.A., Raleigh, North Carolina, for Appellees. **ON BRIEF**: Elliott Schulder, COVINGTON & BURLING

LLP, Washington, D.C., for Appellant. Elizabeth P. McCullough, YOUNG MOORE AND HENDERSON, P.A., Raleigh, North Carolina, for Appellees.

PAMELA HARRIS, Circuit Judge:

Samuel Junior Jackson ("Jackson") is an inmate in the care of the North Carolina Department of Corrections. Since his incarceration, Jackson alleges, his chronic heart condition has deteriorated, and he has suffered both a heart attack and a host of other maladies that severely compromise his quality of life. Jackson filed suit under 42 U.S.C. § 1983, alleging deliberate indifference to his serious medical needs in violation of the Eighth Amendment and naming as defendants two prison doctors, Joseph Lightsey ("Lightsey") and Sher Guleria ("Guleria"), and the medical staff of the Department of Corrections (the "Staff"). The district court dismissed all of Jackson's claims at the pleading stage, ruling first that the Staff should be dismissed as a party and then, in a subsequent order, that Jackson had failed to state a claim against the doctors under Rule 12(b)(6) of the Federal Rules of Civil Procedure.

The principal question before us is whether Jackson's complaint sets forth plausible claims of deliberate indifference that should survive a motion to dismiss. But before we can reach that issue, we must consider whether this appeal is properly before us, in whole or in part, in light of certain omissions in Jackson's notice of appeal.

We conclude that Jackson did not appeal from the district court order dismissing the Staff as a party to this case,

depriving us of jurisdiction to review that order. We do, however, have jurisdiction over the dismissal of Jackson's claims against the doctors, and we hold that while the claim against Lightsey was properly dismissed under Rule 12(b)(6), Jackson has alleged facts supporting a plausible claim of deliberate indifference against Guleria. We therefore vacate the district court's dismissal of Jackson's claim against Guleria and remand for further proceedings.

**I.**

**A.**

Because Jackson appeals from an order granting a motion to dismiss under Rule 12(b)(6), we recount the facts as alleged by Jackson, accepting them as true for purposes of this appeal. See Summers v. Altarum Inst., Corp., 740 F.3d 325, 327–28 (4th Cir. 2014).

Jackson has been an inmate in North Carolina's state prison system since 2008. In 2003, before he was incarcerated, Jackson was diagnosed with congestive heart failure by Dr. Lindsey White ("White"), a cardiologist. White prescribed Jackson a set of six medications that proved effective in managing Jackson's heart condition.

Upon his incarceration at Central Prison in Raleigh in 2008, Jackson met with Lightsey, who is not a cardiologist, for

a screening appointment. During this session, Jackson either presented Lightsey with medical records documenting his cardiologist's diagnosis of congestive heart failure and his prescriptions, or notified Lightsey that White would be sending the records to him separately.[1] Lightsey proceeded to diagnose Jackson with a heart arrhythmia, a comparatively less serious condition, and to alter Jackson's medication regimen.

Jackson alleges that his health went into a tailspin following Lightsey's intervention. He began to experience a number of unpleasant and alarming symptoms, including chest pains and burning sensations in several parts of his body. Fearing that the changes to his medication were to blame, Jackson made multiple requests to the Staff to be seen by a cardiologist, all of which were denied. This deterioration culminated in Jackson suffering a heart attack, for which he received treatment at Rex Hospital in Raleigh.

Jackson was later transferred to Nash Correctional Institution in Nashville, North Carolina. There, he saw Guleria, who told Jackson that he would order additional tests and treatments, including an electrocardiogram, heart rate monitoring, and a special diet. Several months after this visit, having never received any of the tests or treatments and

[1] Jackson's complaint, informal brief, and counseled briefs are inconsistent on this point.

having made numerous sick call requests, Jackson was informed by members of the Staff that they had no record of Guleria entering any orders. As a result of substandard care provided by the defendants, Jackson suffers from chronic and extreme pain, and is unable even to walk to the prison dining hall to eat.

**B.**

On November 2, 2011, Jackson filed his § 1983 complaint in the District Court for the Eastern District of North Carolina, naming Lightsey, Guleria, and the Staff as defendants and alleging deliberate indifference to his serious medical needs in violation of the Eighth Amendment. J.A. at 6. In response to an order from the district court identifying an omission in his original complaint, Jackson filed an amended complaint on April 27, 2012. J.A. at 19.

The district court reviewed that complaint for frivolity under 28 U.S.C. § 1915A(a). Finding that the complaint's allegations pertained only to Lightsey and Guleria, in an order dated July 6, 2012 (the "2012 Order") the district court dismissed all claims against the Staff and dismissed the Staff as a party to the case. Jackson v. Lightsey, No. 5:11-ct-03221-F (E.D.N.C. July 6, 2012), ECF No. 9.

The remaining defendants, Lightsey and Guleria, then moved to dismiss Jackson's complaint under Rule 12(b)(6). The district court granted their motion in a July 31, 2013 order

(the "2013 Order"), holding that Jackson's allegations described only a medical disagreement over proper diagnosis and care and thus failed to state a claim for deliberate indifference. Jackson v. Lightsey, No. 5:11-ct-03221-F (E.D.N.C. July 31, 2013), ECF No. 41. On the same day, the clerk of the district court entered a final judgment in the case, dismissing Jackson's action in its entirety. Jackson v. Lightsey, No. 5:11-ct-03221-F (E.D.N.C. July 31, 2013), ECF No. 42.

On August 12, 2013, Jackson filed a handwritten document with the clerk of the district court stating his intention to "[a]ppeal the Order of the United States District Court [for the] Eastern District of North Carolina [] on this the 31st day of July, 2013 by James C. Foxx [sic], Senior United States District Judge." J.A. at 62. The document did not name the court to which Jackson intended to appeal. However, the clerk for the Fourth Circuit, following standard procedure for pro se appeals, promptly issued an informal briefing order to Jackson as well as to the lawyers who had represented Lightsey and Guleria in the district court. Jackson v. Lightsey, No. 13-7291 (4th Cir. Aug. 13, 2013), ECF No. 5. After Jackson and appellees Lightsey and Guleria filed their informal briefs, the clerk appointed appellate counsel for Jackson to facilitate this appeal. Jackson v. Lightsey, No. 13-7291 (4th Cir. Apr. 28, 2014), ECF No. 25.

## II.

Before reaching Jackson's deliberate indifference claims, we must address whether Jackson has brought those claims before us consistent with Federal Rule of Appellate Procedure 3(c). Because "Rule 3's dictates are jurisdictional in nature, and their satisfaction is a prerequisite to appellate review," Smith v. Barry, 502 U.S. 244, 248 (1992), this analysis determines whether we have jurisdiction over this appeal, and if so, whether it extends to all of Jackson's claims.

### A.

Appellees contend that we are without jurisdiction to decide this case because Jackson failed to name the Fourth Circuit as the court to which he intended to appeal an order of a federal district court within that circuit. Pointing to Rule 3(c)(1)(C)'s requirement that a notice of appeal "name the court to which the appeal is taken," they argue that although there is no court other than the Fourth Circuit to which Jackson could have appealed, this defect in Jackson's notice is fatal to our jurisdiction.

We disagree. Our approach to Rule 3 is not so formalistic. Instead, following the instruction of the Supreme Court, we construe Rule 3 liberally, and measure compliance by asking whether "the litigant's action is the functional equivalent of what the rule requires." Smith, 502 U.S. at 248 (quoting Torres

v. Oakland Scavenger Co., 487 U.S. 312, 317 (1988)); see In re Spence, 541 F.3d 538, 543 (4th Cir. 2008). Where a challenged notice of appeal has provided adequate notice and caused the complaining party no prejudice, there is no reason to allow a "technical impediment[]" to foreclose appellate review. In re Spence, 541 F.3d at 543 (quoting Bogart v. Chapell, 396 F.3d 548, 555 (4th Cir. 2005)); see Smith, 502 U.S. at 248 (notice afforded by a document determines the document's sufficiency as a notice of appeal); Canady v. Crestar Mortg. Corp., 109 F.3d 969, 974–75 (4th Cir. 1997) (finding compliance with Rule 3 in light of adequate notice and lack of prejudice to the appellee).

Applying those principles, we have no difficulty concluding that Jackson's failure to add the words "Fourth Circuit" to his notice of appeal did not bring him out of compliance with Rule 3. Where, as in this case, there is only one possible appellate forum, the filing of an otherwise proper notice of appeal may itself be the "functional equivalent" of naming that court under Rule 3(c)(1)(C). See United States v. Treto-Haro, 287 F.3d 1000, 1002 n.1 (10th Cir. 2002) (Rule 3(c)(1)(C) satisfied despite failure to name appellate forum); Dillon v. United States, 184 F.3d 556, 558 (6th Cir. 1999) (en banc) (same). The facts of this case illustrate the point: Notwithstanding omission of the words "Fourth Circuit," Jackson's intent to appeal to this court was sufficiently clear

that the district court clerk immediately transferred Jackson's notice to our clerk, who in turn issued an informal briefing order to Jackson and to the appellees the very next day. Appellees concede, as they must, that they received prompt notice of Jackson's appeal to the Fourth Circuit and suffered no prejudice as a result of the claimed deficiency in Jackson's notice. Under these circumstances, we hold, Jackson has complied with Rule 3(c)(1)(C), and we may proceed to consider his appeal.[2]

**B.**

Though we have confirmed our jurisdiction over Jackson's appeal as a whole, we must also consider whether that jurisdiction extends to the 2012 Order dismissing Jackson's claim against the Staff. In his notice of appeal, Jackson specified that he sought review of one order: "the Order of the [district court] on this the 31st day of July, 2013 by James C. Foxx [sic], Senior United States District Judge," considering and granting the motions to dismiss of doctors Lightsey and Guleria. Consistent with his notice, Jackson then filed an

[2] Jackson's pro se status, of course, also favors a liberal construction of his notice of appeal. See United States v. Garcia, 65 F.3d 17, 19 (4th Cir. 1995). But our holding, like those of the other circuits to address the question, is not restricted to pro se litigants. See Treto-Haro, 287 F.3d at 1002 n.1 (omission by the federal government); Dillon, 184 F.3d at 558.

informal brief addressing only the dismissal of his claims against Lightsey and Guleria. In his counseled briefs and at oral argument, however, Jackson renewed his claim against the Staff, so we must now decide whether we may review the district court's 2012 dismissal of that claim. We conclude that we may not.

Rule 3(c)(1)(B) requires that a notice of appeal "designate the judgment, order, or part thereof being appealed." Fed. R. App. P. 3(c)(1)(B). Again, we construe the rule liberally and take a functional approach to compliance, asking whether the putative appellant has manifested the intent to appeal a specific judgment or order and whether the affected party had notice and an opportunity fully to brief the issue. See In re Spence, 541 F.3d at 543; Bogart, 396 F.3d at 555. Here, we answer both those questions in the negative, leading to the conclusion that Jackson did not properly designate the 2012 Order for appeal.

First, there is no indication that Jackson intended to appeal the 2012 Order when he filed his notice of appeal. This is not a simple problem of omission, as with Jackson's failure to name the Fourth Circuit as the forum for his appeal. The problem here is that Jackson did name the order he wished to appeal, and that order was the 2013 Order dismissing his claims against the prison doctors. Given Jackson's express designation

of one particular order, the fairest inference is that Jackson did not intend to appeal the other. See Smith v. Barry, 985 F.2d 180, 184 (4th Cir. 1993) (where "all issues triable by Jury" are designated for appeal, court may not hear appeal as to issues that are not triable by jury); see also Osterneck v. E.T. Barwick Indus., Inc., 825 F.2d 1521, 1529 (11th Cir. 1987) ("[W]here some portions of a judgment and some orders are expressly made a part of the appeal, we must infer that the appellant did not intend to appeal other unmentioned orders or judgments."); Caldwell v. Moore, 968 F.2d 595, 598 (6th Cir. 1992) (same).[3]

That inference is confirmed by the informal brief Jackson subsequently filed with this court, which fails even to mention the Staff and is instead addressed exclusively to Jackson's allegations against Lightsey and Guleria. The informal brief is an important document; under Fourth Circuit rules, our review is limited to issues preserved in that brief. See 4th Cir. R. 34(b). Jackson's decision to confine his brief to his claims

[3] At oral argument, Jackson's counsel suggested that the 2012 Order was incorporated by reference into the designated 2013 Order, and hence properly before us. That is incorrect. It is a separate document – the final judgment issued by the district court clerk dismissing Jackson's action in its entirety – that includes a reference to the 2012 Order. J.A. at 61. Whether designation of that final judgment in the notice of appeal might have evinced the requisite intent to appeal the 2012 Order is not relevant here, because Jackson's notice designates only the 2013 Order.

against doctors Lightsey and Guleria mirrors his specific designation for appeal of the 2013 Order dismissing those claims. Taken together, the plainest inference is that Jackson intended to appeal only the dismissal of his claims against his treating physicians.

Second, and relatedly, there is a very substantial notice problem in this case. Precisely because there was no indication that Jackson intended to appeal the 2012 Order, the Staff, having been dismissed as a party to the action for more than a year, was never notified of Jackson's appeal or asked to file an informal brief. As a result, the Staff was not represented in this appeal, on briefs or at oral argument, and has had no opportunity to defend the 2012 Order. This is a far cry from cases in which we have found compliance with Rule 3(c)(1)(B) despite an ambiguous designation because no harm was done – the affected parties were before the court and fully briefed the relevant issues, nobody was taken by surprise, and no prejudice resulted. See, e.g., Canady, 109 F.3d at 974–75; In re Spence, 541 F.3d at 543.

Jackson urges us to look past his omission because he was appearing pro se when he filed his notice of appeal and informal brief. Although we do liberally construe pro se pleadings, we cannot excuse defects that, as here, deprive other parties of the fair notice to which they are entitled. Because Jackson's

notice of appeal did not evince an intent to appeal the 2012 Order and because of the resulting failure of notice to the Staff, we hold that under Rule 3(c)(1)(B), we lack jurisdiction to review the 2012 Order dismissing the Staff as a party to this case.[4]

## III.

We now consider whether Jackson's amended complaint raises plausible claims of deliberate indifference against Lightsey and Guleria.[5] Our review of the district court's order granting appellees' motion to dismiss is de novo. Summers, 740 F.3d at 328. To survive a motion to dismiss, a complaint must present factual allegations that "state a claim to relief that is plausible on its face." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007)). In applying that standard, we liberally construe Jackson's pro se complaint, see Smith v. Smith,

---

[4] In light of our holding that Jackson's failure to designate the 2012 Order for appeal deprives us of jurisdiction, we need not reach questions regarding the timeliness of a putative appeal from the 2012 Order, nor whether Jackson's failure to address the 2012 Order in his informal brief would have precluded our review under Fourth Circuit Rule 34(b).

[5] Jackson originally sought injunctive relief against Lightsey and Guleria as well as damages. On appeal, however, Jackson's counsel conceded that those claims for injunctive relief are moot, and only the damages claims are before us now.

589 F.3d 736, 738 (4th Cir. 2009), take all facts pleaded as true, and draw all reasonable inferences in Jackson's favor. Summers, 740 F.3d at 328.

**A.**

A prison official's deliberate indifference to an inmate's serious medical needs constitutes cruel and unusual punishment under the Eighth Amendment. Estelle v. Gamble, 429 U.S. 97, 104 (1976). A deliberate indifference claim consists of two components, objective and subjective. Objectively, the inmate's medical condition must be "serious" – "one that has been diagnosed by a physician as mandating treatment or one that is so obvious that even a lay person would easily recognize the necessity for a doctor's attention." Iko v. Shreve, 535 F.3d 225, 241 (4th Cir. 2008). Appellees do not dispute that Jackson's chronic heart condition qualifies as objectively serious.

Where the parties differ is over the subjective component. An official is deliberately indifferent to an inmate's serious medical needs only when he or she subjectively "knows of and disregards an excessive risk to inmate health or safety." Farmer v. Brennan, 511 U.S. 825, 837 (1994). That is a higher standard for culpability than mere negligence or even civil recklessness, and as a consequence, many acts or omissions that would constitute medical malpractice will not rise to the level

of deliberate indifference. See Estelle, 429 U.S. at 106. To show an Eighth Amendment violation, it is not enough that an official should have known of a risk; he or she must have had actual subjective knowledge of both the inmate's serious medical condition and the excessive risk posed by the official's action or inaction. Farmer, 511 U.S. at 837–39; Iko, 535 F.3d at 241. It is that exacting standard, appellees argue, that Jackson's allegations fail to meet.

**B.**

We agree that Jackson's allegations against Lightsey, though describing behavior that might support a medical malpractice claim, do not make out a case of deliberate indifference. Jackson contends that during a screening appointment, Lightsey, who is not a heart specialist, diagnosed Jackson with a heart arrhythmia, even though Jackson had produced or offered to produce medical records showing that a cardiologist had diagnosed and treated him for a more serious condition. Lightsey also substantially modified the medication regimen prescribed by Jackson's cardiologist. Though hindsight suggests that Lightsey's treatment decisions may have been mistaken, even gravely so, we agree with the district court that Jackson's claim against Lightsey is essentially a "[d]isagreement[] between an inmate and a physician over the inmate's proper medical care," and we consistently have found

such disagreements to fall short of showing deliberate indifference. Wright v. Collins, 766 F.2d 841, 849 (4th Cir. 1985); see United States v. Clawson, 650 F.3d 530, 538 (4th Cir. 2011). While a non-cardiologist's erroneous diagnosis of a serious heart condition, as alleged by Jackson, may well represent a deviation from the accepted standard of care, standing alone it is insufficient to clear the "high bar" of a constitutional claim. Iko, 535 F.3d at 241.

Jackson's case against Guleria is of a different order. Jackson has no quarrel with Guleria's medical judgment or recommendations. On the contrary, what Jackson wanted was exactly the testing and treatment that Guleria prescribed. Jackson's objection is that Guleria failed to enter the orders necessary to provide Jackson with the promised care, which resulted in Jackson going months without the testing and treatment for his serious heart condition that Guleria thought appropriate.

We have held already that a "[f]ailure to provide the level of care that a treating physician himself believes is necessary" may constitute deliberate indifference. Miltier v. Beorn, 896 F.2d 848, 853 (4th Cir. 1990). In Miltier, we considered allegations against prison doctors very similar to those at issue here: One doctor recommended that a patient, who ultimately died in prison of a heart attack, be transferred to a

cardiac unit but failed to follow up on this recommendation; and another doctor approved the referral but also failed to follow up and confirm that the transfer had occurred. Id. Those allegations, we concluded, clearly presented a triable claim of deliberate indifference. Id.

The same reasoning applies here. Miltier predates the Supreme Court's decision in Farmer, which established the requisite subjective mental state for a deliberate indifference claim. See Miltier, 896 F.2d at 852 (reciting a test for civil recklessness). But the substantive principle we borrow from Miltier – that a doctor's failure to provide care that he himself deems necessary to treat an inmate's serious medical condition may constitute deliberate indifference – survives Farmer. At the 12(b)(6) stage, it is fair to infer that when Guleria prescribed a set of tests and treatments for Jackson's unquestionably serious heart condition, he did so because he subjectively believed they were necessary, and therefore must have known that failing to provide them would pose an excessive risk to Jackson's health. That is all that Farmer requires, see 511 U.S. at 842 (subjective prong may be met by showing that risk is sufficiently obvious that official "must have known" of it), and under Miltier, it is enough to state a claim of deliberate indifference, 896 F.2d at 853. See also Hudson v. McHugh, 148 F.3d 859, 863–64 (7th Cir. 1998) (Farmer satisfied

by allegation that prison officials knew of serious medical condition and need for treatment but nevertheless failed to provide treatment); Miller v. Schoenen, 75 F.3d 1305, 1310–11 (8th Cir. 1996) (same).

Our decision today does not address the ultimate merits of Jackson's claim against Guleria, nor express any view about the likelihood that Jackson will prevail. We hold only that given the liberal construction we afford pro se complaints and the favorable light in which we review them under Rule 12(b)(6), Jackson's allegations state a plausible claim of deliberate indifference as to Guleria. Accordingly, we vacate the district court's dismissal of Jackson's claim against Guleria and remand for further proceedings.

**IV.**

For the reasons set forth above, we affirm the judgment of the district court in part and vacate and remand in part.

AFFIRMED IN PART AND VACATED AND REMANDED IN PART